Good morning. May it please the court. My name is Mark Tanner and I'll be arguing on behalf of all the plaintiff appellants this morning. I'd like to reserve three minutes of my time for rebuttal with the court's permission. The Supreme Court has explicitly held that an individual has a viable cause of action against the government when he is able to prove that the government took action against him in retaliation for the exercise of his First Amendment. Mr. Tanner, none of the plaintiffs were employed by the Attorney General's office when this took place. Mr. Fito for a short period, is that right? That is correct. They are all former Commonwealth employees who had essentially voiced criticisms of Kathleen Kane who was scheduled to testify before a grand jury, give testimony concerning her crimes and misconduct, and who had, in essence, played a role in exposing her misconduct. It is our position that Ms. Kane then engaged essentially in a hell-bent pattern of retaliation against them in an effort to both destroy these individuals and to coerce their silence and stop them from exercising their First Amendment rights. Can I just ask a preliminary question? Yes, sir. With regard to the second issue, must you show actual deterrence of their exercise of First Amendment rights or merely that the plaintiffs or the defendants intended to coerce or intimidate? Good question, Your Honor. There's a big circuit split there. Sure. The test is an objective test, whether the conduct of the defendant could chill the First Amendment rights of the plaintiffs. This was something that was observed as recently as April of 2017 in Judge Restrepo's opinion in the Mirabella case. The Mirabella is a very different case. Mirabella was a situation where the alleged retaliatory act was simply threatening to take sanctions against someone. There was kind of a check. All they were saying was, we're going to resort to legal recourse if you sue us. And there's a check there. If what the plaintiffs did in that case was sanctionable, there would have been sanction. If it wasn't sanctionable, there would have been a court there to basically say, you don't get sanctioned. So that's a very different situation than we have here. And I readily agree that Mirabella is entirely distinguishable from this case. I was just acknowledging that in dicta, Judge Restrepo had observed the same objective analysis as to the test of deterrence, meaning, could the actions of the defendant deter a reasonable person? And the policy behind that... Is it a reasonable person or a reasonable person in the plaintiff's shoes? Is this the ordinary person, the man in the suit, the Louis Nye test? I don't think you remember Louis Nye. Or is it someone who is... Actually, I do. Or is it someone in the position of these plaintiffs, prosecutors? I would argue it is a reasonable person, Your Honor, because if you look at the cases that form the underpinnings of the objective test, they suggest as a matter of policy that the infringement of constitutional rights shouldn't depend on one's relative timidity or boldness. Yeah, but that's a different question. Whether or not the person is particularly stoic or not may view the person's status and whether or not the person may be likely to be deterred from exercising the right of speech because of the position. The reason I ask that, it seems to me when you're talking about prosecutors, you're talking about someone whose credibility is all important, especially prosecutors who are down the road, and the Mueller situation is a perfect example. If you bring to the table baggage, the likelihood of you down the road being engaged in a professional investigative capacity is sufficiently retarded because you don't have the kind of holier than Caesar's wife kind of credibility to bring. So that's different than saying the prosecutor has to be particularly bold as opposed to one who is particularly reticent. It seems to me we have to factor in the fact of these folks and their official function and the importance to them of their credibility, their public credibility. I think that's an excellent point because we would argue that the plaintiffs in this case were particularly vulnerable to this sort of retaliatory misconduct. As we pled in our complaint, as a consequence of the retaliation, two of the plaintiffs had to resign from their public positions, two others were demoted from their positions at the Philadelphia District Attorney's Office, and yet they never had an opportunity to defend against these allegations, which is what in essence we were seeking through this case because we believe the allegations were unfounded and in fact false for the most part. Is there a distinction to be made between count two, and by count two I'm referring to the grand jury leak and the plaintiffs being approached, the courthouse and the other claims in this case? I think that all of the claims have to be read in a common context. This is essentially a war that the defendant engaged upon with a torrent of retaliation, and we can break it down in a series of retaliatory acts, but you can't view each act in isolation. I think that the proper context is to review all of the misconduct by Cain, and the entire torrent of retaliation that she unleashed upon these individuals, and then determine whether or not that is something that could reasonably deter someone from exercising their First Amendment rights. There's a whole breeder, and there's some of its parts. Is it a situation where count That's enough, count three. That's not enough. But when you combine counts one through six, you get something which is greater than the individual components of that equation. I would argue that each count independently is sufficient, but when viewed in their totality, the evidence is overwhelming that the conduct was retaliatory. So do you see the conduct in count two as more egregious, less egregious, or the same as the other counts? Well count two describes conduct for which Cain has been criminally convicted in terms of leaking the grand jury information, violating the statute, essentially creating so-called evidence of misconduct on the part of two of the plaintiffs, and leaking it to the press. I think it's certainly more egregious than the other counts, but at the same time I don't think it Well they're also more affirmative acts, so to speak, as opposed to just speech. It wasn't just Kathleen Cain talking. It was Kathleen Cain doing things affirmatively. And count two is one that, as you recognize Judge Restrepo, it elevates the misconduct from beyond mere speech, as might have been contemplated in the Fourth Circuit Suarez decision and in some other decisions, and actually describes active criminal misconduct. There's never been a case where a government official has been convicted of crimes and that same conduct is somehow shielded from civil liability, you know, under qualified immunity or otherwise. This is a unique scenario, and this is probably the most egregious retaliatory conduct of a government official. I couldn't find another case where the retaliatory conduct was also a crime. Well maybe we should turn to the qualified immunity issue. Given the district court's action here, and especially as to that second prong, whether or not this is a jury question or a question that's decided by a court as a matter of law, how can we say that the law in this area is so well settled that clans should not be entitled to, I'm sorry, that they should not be entitled to qualified immunity? Certainly, Your Honor. The touchstone of qualified immunity, as described by the United States Supreme Court, is whether a government official's conduct violates clearly established law when at the time of the challenged conduct, the contours of a right are sufficiently clear such that every reasonable official would have understood that what he or she is doing violates that right. The Supreme Court has stated, we do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. In other words, the court has to place themselves in the shoes of Kathleen Kane or the government official and decide whether it would be reasonably clear to someone standing in her shoes that what she was doing was going to violate a constitutional right of the plaintiffs. Why isn't this a situation of just LBJ taking to the next level and really playing serious hardball and going out to get someone to use things out to get you? Well, this isn't, I think you're alluding to the argument that was made under the non-presidential Koren decision. Is this the rough and tumble world of politics or is this something more than that? And I would suggest it's something more than that for two reasons. First, the five individuals that are the plaintiff appellants in this case have never voluntarily entered the political arena. They have never run for office. They were simply line office prosecutors and investigators who worked under five different attorney generals. Their political parties, their affiliation remains unknown and undisclosed. This isn't a situation where you have a back and forth between political candidates who are taking shots at one another. This is a situation where these line office prosecutors and investigators saw misconduct, misconduct on the part of a sitting government official and decided not to be quiet about it. There was no political campaign going on after Cain took office. This wasn't campaign rhetoric. It was the exposure of an attorney general who was committing crimes. But it was payback. It wasn't a political campaign, but it was fully political payback. Well, I guess the question is who was paying who back? Cain was essentially retaliating against these individuals because of, well, there were a number of reasons, but primarily there was the Tyrone Ali bribery investigation situation. Cain was upset because it was demonstrated that she had a conflict of interest in that investigation. Her own political campaign consultant, Josh Morrow, was implicated in that investigation. Cain had now set up a transition team like most attorney generals would do before taking office. She shows up for her first day at work, unaware that there was an investigation that was ongoing that implicated her own campaign personnel. At that time, Mr. Fina had suggested, hey, you have a conflict. I sent this to the FBI. She didn't like that. She brought that back. She says, oh, no, this investigation isn't going forward. We say she made that decision because she didn't want to implicate her friends and her campaign workers. You agree that Kathleen Cain has a First Amendment right to criticize folks, right? I think she has a First Amendment right to criticize people, but that right can't cross When was the line crossed? The line was crossed, and you have to look at motive. All of the cases say that this That's a fact question. We believe that her motive was not to bring some legitimate criticism to light in the public arena, but to, in fact, destroy those individuals that had information and that were going to give testimony that were going to take her down. That's the question, and that's a fact question for the jury. That's why this case should have proceeded beyond the 12B6 stage to allow a factual record to be developed so that we could demonstrate that she was hell-bent with one single motive, and that was to take down those individuals that she saw as threatening her tenure as the Attorney General of this Commonwealth. You mentioned Mirabella. Mirabella was decided as a matter of law. That was a fact question there, but it was decided as a matter of law, and that's pretty consistent with a lot of our cases. With some of the cases, I would say. I don't think that the case It's all over the place. I agree with that. Sure. There is substantial precedent, including cases from this Court, that suggests that whether the conduct is sufficiently retaliatory to deter a person in the plaintiff's situation from exercising their First Amendment rights is a question that is reserved for the fact finder. There are also cases that say that motive is a question of fact to be determined by the fact finder who can view the demeanor of the witnesses and the totality of the evidence and make decisions about motive. Motive isn't something that can be gleaned from the face of a pleading. Would you agree that there was nothing about Kane's conduct that deterred these specific plaintiffs? They continued to push back, so to speak. They did, but I don't think they should be penalized for their courage in that regard. I think the case law would suggest that they shouldn't. I think the case law would say it's not an examination of the subjective review of these particular plaintiffs and whether they were, in fact, deterred. It's whether doing things such as Kane did, such as pasting their pictures on CNN and falsely suggesting that they were pornography peddlers including images of children, whether that is something that could deter a reasonable person from speaking out against a public official who has committed wrongdoing. We think it is, and we think that's something that a fact finder could reasonably conclude would be retaliatory and sufficient to deter someone from exercising their First Amendment rights. We mentioned motive. To me, there's no issue here, really, is the motive. Why, you know, in some cases it may be an issue of fact. You've got the statement on the record, this is war. It's pretty clear what the motive is. It's retaliation. They're not debating that. So why doesn't it then become a matter of law as opposed to a question of fact for a jury to decide? Specifically, Your Honor, the question of fact for the jury is, well, I agree, they're not debating motive, so if the court wants to conclude as a matter of law that Kane's motive was single-minded and that was to retaliate against the plaintiffs, certainly I would agree with you, but I would suggest that even that conclusion should properly be reserved for a fact finder. Although I acknowledge they're not, well, I wouldn't say that they're not. In their papers, they suggest that, well, Kane had a First Amendment right to speak out on, quote, matters of public importance. So they attempt to suggest that, for example, Kane's disclosure of the email, these individuals in connection with the emails, their names, oh, that was motivated by some genuine desire to speak out on a matter of public importance. Where they're silent is why she chose these five men out of the hundreds of people on all content of a single email. Mr. Costanza, Mr. Noonan never even sent an email. Stuff wound up in their inbox, no doubt about it, just like hundreds of other people, but only five people have ever been named out of the hundreds of people, even when the Gensler report came out subsequently. They chose not to name anybody. They named these five. That's where motive becomes important because it demonstrates that this isn't speech created from some desire to speak out on a matter of public importance by a government official. This is a selective and targeted speech designed to retaliate against individuals who Kane knew had information that were going to lead to her downfall. Okay. Thank you, Mr. Chairman. We have a few minutes left. Good morning. My name is Ed Ellis. I'm with Whitler Mendelsohn in Philadelphia. I have with me at council table, Rich Harris is one of my partners. And good morning. May it please the court. Okay. Your Honor, government officials should be free to speak to the public without risking personal liability under section 1983. How far should they be able to go? As far as they want to go without crossing the line of either taking official action or threatening to take official action against the person they're speaking about. Let's see if we can just make sure we understand. We're talking about retaliation claim. And the second element is whether the action would sufficiently deter the exercise of constitutional rights by the plaintiffs. Is that correct? Yeah, absolutely, Your Honor. And you know, if an employer criticizes an employee or reprimands an employee or even falsely accuses an employee, that's okay. That can happen. The out, however, is if those the person. Is that correct? Am I stating everything so far? I would not necessarily agree with the way you phrased it, Your Honor. Okay. Let's say you have this type of relationship and the person who's being a defendant has is if the intent is to coerce or intimidate. No, I don't think that's what the cases say, Your Honor. I think the cases... What cases say differently than that? Well, I think the Suarez line of cases says that regardless of the intent, in other words, you've got three prongs. You've got the exercise of First Amendment rights. Then you've got the retaliatory action, and then the third is the connection between the two. The connection between the two, the nexus, as the cases say, is where the intent comes in. Judge McKee is correct that we have not conceded intent, but we haven't made it an issue in the case and the district court below decided the case based on prong two. But just this year, Judge Estrepo wrote Mirabella, and he says that a retaliation claim involving a government official's own speech must involve a threat, coercion, or intimidation that a punishment will follow from the continued exercise of one's First Amendment rights. So that's correct, Your Honor, but that's point two. That's the whether something is retaliatory action in the first place. And what the case law under Suarez and the cases in this circuit that have adopted Suarez says is that if all it is is speech, then it's not a retaliatory act. Well, for the most part, Your Honor, I would say that this is speech. It's communication of one kind or another by the Attorney General with the public about things that have gone on. It goes further than that. I mean, you've got three allegations that I know of where Afina's colleague was told by Kane's deputy that if Afina did not stop criticizing Kane, Kane would release private emails of former Office of Attorney General staff, and that's on JA-177. Secondly, Kane's staff threatened a lot of Afina's people are going to get hurt if Afina doesn't back off, and that's on 175 of the appendix. And thirdly, Mileto physically threatened and intimidated persons, plaintiffs at the courthouse, where they were to testify against him regarding the grand jury leak. And that's on JA-172. I'm familiar with those allegations, Your Honor, but what the district court did was it looked at those allegations and I think quite fairly construed those allegations as not making a connection between Kane and the speaker who was making the statement to Afina's colleague or Costanza's colleague. This is a 12-6 case, right? Oh, yes, sir. Absolutely. And so you have to take what is alleged as fact and say, despite all that, I win as a matter of law. Absolutely. And why aren't these facts that really need to go on to the next step? Because the plaintiffs didn't allege that she directed anybody to do anything. All the plaintiffs alleged is that there were people from the office who were having lunch with other people. She was an explorer, too. Page 151 of 152 on page 40, which is A-175. Following these events, Kane sought a way to utilize these emails to retaliate against Afina, Sheets, Feathers, Costanza, Noonan, and others by threatening to release these personal emails, which would embarrass them in the event plaintiffs continued with their lawful exercise of free speech that was critical of her conduct. And then 152. Upon information and belief, in July and August of 2014, Kane instructed members of her staff to contact members of the media and suggest to them that the emails existed for which they should make a right-to-know law request. That's true, Your Honor, but doesn't all that relate to releasing information to the public? Doesn't that relate to the fact that the people on the plaintiff's side here, the people that preceded her in the office, were running it in an inappropriate way? The information was not released without being redacted so as to enhance the participation of the plaintiffs. It wasn't just, well, here are all the transcripts. It was released in such a way as to point accusatory fingers at Afina, Stanza, and Costanza. The statement that only five people's emails were released or that only five people were identified with the pornography is not true. We have to accept it. It's 12B6 we're talking about. I'm sorry? We have to accept it at this point. It's true, right? We're talking about a 12B6 dismissal. That's what was planned. So you can't go beyond that right now, correct? Well, Your Honor, the complaint has attached to it. The first amendment complaint has attached to it certain of the material that was released. And it was all targeted towards these three plaintiffs, right? Well, there are about 100 people in that email that contained the images of the children. Wasn't it all targeted towards these three particular plaintiffs? Your Honor, that particular email was submitted to the Pennsylvania Supreme Court as part of a petition that Kathleen Kain filed. And it included a lot of people. It was specifically directed at Afina and Costanza because she was contending in the Pennsylvania Supreme Court that they had rigged the process in Montgomery County to try to get her charged. So to that extent, it was directed to Afina and Costanza for a particular reason related to the criminal case. Let me ask you, do you think that taking on this conduct in its totality, is it your position, not your position, but the Attorney General's position, that the line was never crossed? Yes, Your Honor, of course. That is my position. It's my position that all of this deals with communications, that all of it is releasing information from the government to the public, and that as long as that's what it is... I understand that the emails contained child pornography, especially in this context when the whole case arises and starts out of Kain's campaign statements that the plaintiffs here were going easy on Sandusky and she was going to get to the bottom of what happened to Sandusky. And the way that they dragged out the Sandusky investigation bought him more time to abuse two kids who would not have been abused had they beautifully prosecuted the case. Now, what about that? And saying, which she later began to, as I understand, but saying that there was child pornography involved in the emails. Your Honor, it's plain from the face of the complaint that she never said child pornography. The plaintiffs have made that argument, but if you look at the transcript that's in the complaint itself, she says that there are images of children. There were images of children. They're attached to the complaint. You can see that there are images of children. If you talk about a release of pornographic emails and then say there are images of children, true, you may not say, and by the way, the pornographic images included the images of children. That's a line that doesn't have to be connected. If someone says, A, pornographic images were released, B, there were images of children, I'm not saying, no, that doesn't necessarily mean that there was child pornography, but anybody who hears that, especially in this day and age, the automatic conclusion is going to be they were watching child pornography. Just as surely as she came out with a declaration, these people were involved in watching child pornography while they were investigating Sandusky for abusing children. I don't know how you can get around that. Your Honor, it's not what she said. The transcript is plain. She said that and later recanted, didn't she? It's a transcript. No, she didn't recant it, Your Honor. Her office issued a statement that there was no child pornography. She was asked about it. Of course, she had never said there was child pornography in the first place. She said there were images of children. Right, it's right in the transcript. It says there were images of old people, images of women in terrible positions, and there were images of children. I'm paraphrasing. Give me an example of conduct that would cross the line. Well, I'll give you an example. Show it with a bullet to the head, because that's what you're arguing. Your Honor, if you want to see the distinction between speech and non-speech, there's a case in the Fourth Circuit that follows Suarez and comes out the other way. It's called Blankenship v. Manchin. It's at 471 F3rd 523. The Suarez case involved an attorney general who was making statements about a particular business that operated in the state of West Virginia. The plaintiffs didn't like what he was saying. They sued him. They lost because all the attorney general was doing was making statements. In the Blankenship case, again, you have a business operating in West Virginia. You have statements made by the governor of West Virginia that implied in the statements that he was going to hyper-regulate a coal company. In other words, make it very difficult for the coal company to operate because of the involvement of the president of the coal company in politics. Because there was an actual threat to take official government action, which there isn't It crosses the line. It crosses the line if you fire somebody. It crosses the line if you indict somebody. But if all you do is talk about them, no matter how bad it is, and even if it's defamatory. What if it's alleged that you tell a subordinate, in this case Mulatto, to fabricate a story that he had uncovered evidence in the Monteshire investigation? I'm not saying it's true. I'm just saying there's an allegation to that effect. Well, if that's true, your honor, that would become a defamatory statement. And that's clearly within Suarez. And the other cases that have followed Suarez. It's a defamatory statement. Well, your honor, if Mulatto tells a lie. If Cain tells Mulatto to tell a lie. Okay. If either one of them tells a lie, or tells the other to tell a lie, it's still just a lie. It's defamatory. It's definitely defamatory. But if it's for the purpose of determining one's exercise of constitutional rights by coercion or intimidation, doesn't that qualify? Your honor, not if you follow Suarez. Suarez says, even if it's defamatory, let's assume an evil intent. That's not sufficient to trigger... I mean, for example, this case is very, very different from Manchin and Blankenship. In the Fourth Circuit. That was a case of the Attorney General trying to do his job with regard to some really significant safety concerns at mines that were controlled by Blankenship. And this is nothing like that. Well, your honor, this still doesn't get to official government action. This isn't a case where Manchin told a subordinate to go fabricate evidence against Blankenship. Manchin told the subordinate to hyper-regulate. That's different. To protect the citizens of West Virginia. But he's liable. Or he could be liable. The case has to go back for a trial, but he could be liable because of what he... He just said, we're going to make sure you tell the lie. And we're going to be extra careful. That's different than telling somebody to go fabricate evidence with regard to the Mondashir investigation. If that's true, your honor... If it's true, let's say it is. If it is unlawful, I'm sorry, if it is a violation of the First Amendment for Kathleen Kane to do that, to put out bad, incorrect, false information, then the concept of defamatory in the Suarez line of cases doesn't mean anything. But there's a tale to it. If it's for the purpose of coercing or intimidating a person from exercising his First Amendment rights. But all the cases assume that, your honor. And we can assume that here. It's still a question of whether it fits within the second, whether it fits within the second prong of... Some of our cases are confusing in that issue. Maybe this case is an excellent example of why they cannot be decided at the 12 v. 6 level. It's got to be decided by a fact finder. Well, because the Suarez case, the Corrin v. Noonan case, and a lot of other cases... Corrin's not presidential. Suarez is 4th Circuit. I understand that, your honor. I mean, the reason is because the case law... If you follow those cases, and I recognize that one is not presidential and one is not in the 3rd Circuit, but if you follow those cases, it simply takes out of play the second element of the First Amendment claim, if it's only speech. Even if the speech is defamatory. But here we have more than speech. The leaking. We can say, I guess, if it were a First Amendment case, you could probably, if First Amendment case is the traditional concept of whether or not the government can preclude you from doing that, I guess you could argue that that is assertive conduct. You're not arguing that. That would be a real stretch here. It wasn't assertive conduct. It was conduct. It wasn't conduct intended as speech, in that sense. It was conduct intended as conduct. As an action motivated by a desire to retaliate. It is conduct intended to communicate with the public bad things that were done, at least in Kathleen Kane's view, by the plaintiffs in this case. Regardless of whether it's telling Mileto to do something, releasing the emails that contained all the pornography, or in the alternative, the release of information that was subject to grand jury secrecy. And there's a process... I'm sorry, I'm out of time here. No, go ahead. There's a process to deal with someone who's violated the grand jury secrecy law. And that process has run its course, almost. It's still on appeal. But that doesn't necessarily mean you have to tear up your First Amendment law and create a chilling effect for public officials in this situation. It also doesn't mean that people who are injured by that process are automatically deprived of a right to compensation because there's a countervailing criminal process in place. I agree with you, Your Honor. But the problem is that you risk creating a chilling effect for any public official who wants to speak about somebody as a matter of... Think about that chilling effect. You're saying that we would risk creating a situation where someone would be reluctant to disclose grand jury material or to lie about persons who have attacked them publicly. I'm not so sure that's such a bad chill, if that's what you're arguing. That's an extreme version. But if you dial it back a little bit... That's what happened here. What do you mean it's an extreme version? Isn't it true that she would leak grand jury information and then she had an individual approach the plaintiffs at the courthouse in an effort to intimidate them to the extent that they had to get a protective order from the judge? Isn't that what happened? Well... That's what's played. Followed them into an elevator. To take the first point first, there's no final criminal judgment yet, but the conviction is there. Let's assume hypothetically it's affirmed. Let's assume that it's an allegation. Because that's what's more tricky. Let's assume it's true under 12b-6. Let's assume it's all true. Okay. She's still communicating through the release of that information. And if it's a communication to the public about these individuals, then that does not satisfy the point two. So committing a crime in an effort to intimidate somebody else is okay according to the Attorney General's position? It's a communicative act. If the crime is communicative to the public, it's okay. You can do it. That's what the Attorney General of Pennsylvania is saying today. Well, she's no longer the Attorney General. You represent the Attorney General's office. I don't think the office is a defendant here. I think that the former Attorney General is the defendant. I didn't answer the question. Is that what you're arguing? Yes, absolutely. Okay. I'm sorry. I don't answer it. Thank you. Thank you. Okay. Thank you. As the court has obviously already recognized, we're here on a dismissal under a 12B6 motion. We are entitled to benefit of every allegation, plausible allegation in our complaint, as well as every inference that can reasonably be derived therefrom. We don't have to prove, even though we can, that Cain has been convicted beyond a reasonable doubt on this stuff. We just have to plead it in our complaint. The court's recognized that, and I'd like to move on to a second topic, and that is the Suarez exception. The Suarez exception in the Fourth Circuit protects a government actor's free speech conditioned upon two things. One, that the retaliatory action consists of, quote, mere speech. In this case, it doesn't, as the court has already recognized. There were criminal actions giving rise to the retaliatory conduct here. And two, it requires the absence of a threat or coercion. We have two separate instances of threats and coercion pled in our complaint. Under either of those scenarios, the fact that the conduct is more than mere speech, or the fact that there were threats and coercions, Suarez doesn't apply. By its plain language, under both of them, there's no way it should apply. Finally, I'd like to direct the court's attention to the words of this court in the Alla v. Sieberling case, which was a Third Circuit decision in 2000. Quote, Government actions which standing alone do not violate the Constitution may nonetheless be constitutional torts, if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right. That is precisely the circumstance that confronts the court in this present case. Kane's motivation has been pled throughout this complaint and has not even been challenged as being a single motive to destroy these individuals. While we would argue that her conduct was not legitimate government action, even if the court thought there was a legitimate element to it, it hinges on her motive, not whether it could be explained by some public benefit or something else. Motive, as this court stated in Montero v. City of Elizabeth, quote, motive is a question of fact that must be decided by the jury, which has the opportunity to hear the explanations of both parties in the courtroom and observe their demeanor. The Supreme Court similarly stated in Mitchell v. Forsyth, improper intent is a pure question of fact. We respectfully suggest that this case should be permitted to move beyond the pleading stage so that a full factual record could be developed. These issues can be squarely addressed in light of the evidence that will be accumulated through discovery and that these men can finally have their day in court to demonstrate that they were the wrongful victims of retaliation at the hands of the criminal Kathleen Kaye. Thank you. Thank you.